**IT IS ORDERED as set forth below:**



**Date: August 23, 2023**

_Susan D. Barrett_

United States Bankruptcy Judge
Southern District of Georgia

---

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Augusta Division

| | | |
|---|---|---|
| IN RE: | ) | Chapter 13 Case |
| | ) | Number <u>23-10189</u> |
| GWENDOLYN DIANE WILLIAMS, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

## OPINION AND ORDER

Before the Court is the Motion to Set Aside Order of Conversion and Objection to Conversion to Chapter 13 (the "Motion to Set Aside Conversion") filed by the Chapter 7 Trustee ("Trustee") and the response filed by the debtor, Gwendolyn Diane Williams ("Debtor"). Dckt. Nos. 28 and 33.

The Trustee's Motion to Set Aside Conversion comes after Debtor moved to convert her case from chapter 7 to chapter 13 on May 16, 2023. Dckt. No. 18. The case was converted to

chapter 13 the same day.  Dckt. No. 23.[1]  After notice and hearing, the Motion to Set Aside Conversion is granted.

## **FINDINGS OF FACT**

The Trustee argues Debtor's failure to properly disclose her assets at the onset of her chapter 7 constitutes bad faith and therefore she is not entitled to convert to a chapter 13.  Debtor acknowledges there were some inaccuracies in her original schedules but contends these were innocent mistakes and she is entitled to convert the case under §706(a).[2]

### **Original Schedules.[3]**

Debtor filed her chapter 7 case on March 7, 2023.  Under penalty of perjury, she submitted a Petition and Schedules reflecting the following:

1. No legal or equitable interest in any real estate.  Dckt. No. 1, Sch. A/B at ¶1.

2. As to whether she is a beneficiary of someone who has died, she stated: "My father [] just passed (2/21/2023), testate, heirs:  me and my 3 brothers (decedent's real estate subject to mortgage [with an outstanding] balance [of] $80K)."  Id., Sch. A/B at ¶32 and Sch. C at ¶2.

3. Four financial deposit accounts (a checking, two savings accounts, and a health savings) with a collective balance of $7,800.00.  Id., Sch. A/B at ¶17.

4. Monthly expenses exceed her monthly income by $159.00.  Id., Schs. I and J.

5. Her only debts are unsecured claims, totaling approximately $25,000.00, with no equity available after exemptions to pay her creditors anything.  Id., Summary of Your Assets and Liabilities and Certain Statistical Info. and Sch. E/F.

---

[1] In this District, such cases are converted when the motion is filed, subject to objection.

[2] Unless otherwise noted, all statutory references are to Title 11 of the United States Code.

[3] The subheading in the Findings of Fact and Conclusions of Law sections of this Order are for organizational purposes only.  The analysis and discussion in each section is not limited to the subheading but apply throughout without being repeated in each section.

**<u>Debtor's Testimony at the Hearing Regarding the Initial §341 Meeting and Other Matters.</u>**

Debtor missed numerous previously scheduled §341 meetings because of work commitments, but finally attended the meeting on May 10, 2023.  Under questioning from the Trustee at the §341 meeting, she initially testified that she did not own any real estate.  She denied inheriting anything in the last five years other than a partial interest in her father's residence and two previously undisclosed life insurance policies of $5,000.00 and $6,000.00, respectively.  She testified that her father told her one of these policies was to cover his funeral expenses.  She denied the existence of any other insurance policies.

Debtor's father passed away on February 21, 2023, two weeks before Debtor filed her bankruptcy petition, and almost three months before her §341 meeting.  Debtor testified at the hearing that she had been working with her bankruptcy counsel for some time before her father passed away.  She also testified that she provided her attorney with a copy of her father's will prior to filing her bankruptcy petition.  The will provided that Debtor would inherit her father's entire estate, not a pro rata distribution with her brothers.

Under further questioning from the Trustee at the §341 meeting, Debtor acknowledged for the first time that she actually owned the Morehall Drive residence when she filed her bankruptcy petition.  Her father conveyed the property to her in January 2023, well before she filed this bankruptcy.  Debtor testified at the §341 meeting the property was worth about $125,000.00.

Upon discovery of discrepancies between Debtor's schedules and her assets, the Trustee continued the §341 meeting in order to obtain additional information.

3

**First Amended Schedules Filed Contemporaneously with the Motion to Convert.**

Six days after this initial §341 meeting, and contemporaneous with filing her Motion to Convert to chapter 13, Debtor amended her schedules for the first time.  The amendments disclosed her outright ownership of the Morehall property, which her schedules valued at $96,351.00 based upon the tax-assessed valuation, subject to an outstanding $80,000.00 mortgage.  Dckt. No. 19, Sch. A/B at ¶1.1.

These amendments also disclosed for the first time that Debtor is the beneficiary of a $100,000.00 life insurance policy on her father.  Id., Sch. A/B at ¶30.  Debtor testified that she discovered this policy in the six-day window between the initial §341 meeting and her filing of the Motion to Convert when she reviewed the checking account Debtor jointly owned with her father.

Debtor's father became ill in 2021 and moved back into the Morehall property where Debtor was living.  In November 2022, he was diagnosed with stage 4 cancer and passed away in February, before she filed her bankruptcy petition in March.  Debtor testified her father handled all of his financial affairs and she was unaware of this $100,000.00 insurance policy until she reviewed her father's checking account records.  The Trustee points out this actually is a joint checking account that Debtor owned with her father.  Furthermore, Debtor's brother testified at the hearing that their father handled his finances until he became ill.

Debtor's initial schedules disclosed four bank accounts—a checking account, two savings accounts, and a health savings account with a collective balance of $7,800.00 as of the petition date.  Dckt. No. 1, Sch. A/B at ¶17.  In her initial chapter 7 petition, Debtor claimed these funds along with all her other assets as fully exempt from her creditors' reach.  Id., Sch. C at ¶2.  Her first

amended schedules reflect a significant increase in the collective balance of the four bank accounts, from $7,800.00 to $11,537.00.  Dckt. Nos. 1 and 19, Sch. A/B at ¶17.

In addition, Debtor's net monthly income increased from a negative $159.00 to a positive $525.00.  Dckt. Nos. 1 and 19, Schs. I and J.  Debtor failed to provide any explanation of the significant increase in her net monthly income.  This positive monthly income is relevant because it shows an ability to fund a chapter 13 plan.

Finally, these amendments also disclosed Debtor would receive the following property from her father's estate:  a 2011 Toyota Highlander (144,000 miles); a 2007 Toyota Sequoia (inoperable); and a bank account with Bank of America with an approximate balance of $4,000.00.  Dckt. No. 19, Sch. A/B at ¶32.  She valued the property due from her father's estate, including the Bank of America account, at $8,000.00 total.  Id.

### Second Amended Schedules Filed Before Hearing on Trustee's Motion and After the Conversion.

After the conversion and a few days before the hearing on the Trustee's Motion to Set Aside Conversion, Debtor again amended her schedules to disclose four previously undisclosed bank accounts.  Dckt. No. 32, Sch. A/B at ¶17.  Two of these accounts are relevant for purposes of this matter—another savings account with a balance of $2,068.00 and a checking account that she jointly owned with her father with a balance of $7,377.00.  Id.   The collective balance of her accounts rose again from $7,800.00 to $20,967.00.  Dckt. Nos. 1, 19 and 32, Sch. A/B at ¶17.  At the hearing, she testified she gave her counsel these accounts before she filed her bankruptcy petition.

In sum, her twice-amended schedules increased her assets from $36,175.00 to more than $259,000.00 and increased her net monthly income from a negative $159.00 to a positive $525.00. Dckt. Nos. 1, 19 and 32, Schs. A/B, I and J.

5

## CONCLUSIONS OF LAW

The parties acknowledge that Debtor does not have an absolute right to convert her case to a chapter 13.  Marrama v. Citizens Bank of Mass., 549 U.S. 365, 372 (2007).  Furthermore, given the facts and circumstances of this case, the parties acknowledge the Trustee now has the burden of proof to establish that Debtor is not eligible to convert her case.  In re Bradley, 649 B.R. 693, 701 (Bankr. D.S.C. 2023)(once debtor makes a prima facie case for conversion, the burden shifts to the opposing party to show debtor is not eligible); In re Cilwa, No. 15-00263-HB, 2016 WL 2641963, at *3 (Bankr. D.S.C. Apr. 14, 2016)(same); In re Broad Creek Edgewater, LP, 371 B.R. 752, 757 (Bankr. D.S.C. 2007)(same); see also In re Goines, 397 B.R. 26, 33 (Bankr. M.D.N.C. 2007)(the party opposing the conversion has the burden to establish by a preponderance of the evidence that debtor is not entitled to conversion).

The Supreme Court found a chapter 7 debtor does not have an absolute right to convert to chapter 13 under §706(a) if she has engaged in bad faith conduct, prepetition or during the pendency of her chapter 7, sufficient to establish "cause" that would ultimately warrant dismissal or reconversion of a chapter 13 case.  See Marrama, 549 U.S. at 373-74; Cilwa, 2016 WL 2641963, at *4; In re Gabriel, 390 B.R. 816, 819 (Bankr. D.S.C. 2008).  Section 1307(c) provides that a chapter 13 case may be dismissed or converted to chapter 7 "for cause" and provides a nonexclusive list of ten causes justifying conversion or dismissal.  11 U.S.C. §1307(c).  Although none of the enumerated reasons in §1307(c) include bad faith conduct, the Supreme Court found:

> Bankruptcy courts nevertheless routinely treat dismissal for prepetition bad-faith conduct as implicitly authorized by the words "for cause." In practical effect, a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of prepetition bad-faith conduct, including fraudulent acts committed in an earlier Chapter 7 proceeding, is tantamount to a ruling that the

6

> individual does not qualify as a debtor under Chapter 13. That individual, in other words, is not a member of the class of honest but unfortunate debtor[s] that the bankruptcy laws were enacted to protect.

Marrama, 549 U.S. at 373-74 (internal citations and quotations omitted).

Courts must consider the totality of the circumstances in determining whether a debtor has acted in bad faith.

> We have no occasion here to articulate with precision what conduct qualifies as "bad faith" sufficient to permit a bankruptcy judge to dismiss a Chapter 13 case or to deny conversion from Chapter 7. It suffices to emphasize that the debtor's conduct must, in fact, be atypical. Limiting dismissal or denial of conversion to extraordinary cases is particularly appropriate in light of the fact that lack of good faith in proposing a Chapter 13 plan is an express statutory ground for denying plan confirmation. 11 U.S.C. §1325(a)(3).

Marrama, 549 U.S. at 375, n.11; In re Piazza, 719 F.3d 1253, 1263 (11th Cir. 2013)(explaining the totality-of-the-circumstances inquiry endorsed by Marrama looks for "atypical" conduct rising to the level of bad faith, or a lack of good faith); Kitchens v. Ga. R.R. Bank & Trust Co. (In re Kitchens), 702 F.2d 885, 888-89 (11th Cir. 1983)(providing non-exclusive list of factors to consider and providing that "[b]roadly speaking, the basic inquiry should be whether or not under the under the circumstances of the case there has been an abuse of the provisions, purpose or spirit of [the Bankruptcy Code]….").

In this case, after considering the evidence submitted and observing the demeanor of the witnesses, the Court finds Debtor is not eligible to convert to a chapter 13 because she has engaged in bad faith conduct and she is not the typical "honest but unfortunate" debtor. Debtor is more sophisticated than many debtors. She is a nutritionist and has worked for the same employer for more than 20 years. Dckt. No. 1, Sch. I at ¶1. She has filed at least two previous bankruptcy cases

7

and has some familiarity with both the chapter 7 and chapter 13 bankruptcy processes.  <u>See</u> Dckt. No. 1, Vol. Pet. at ¶9; Ch. 7 Case No. 05-12135 (Bankr. S.D. Ga. 2005); Ch. 13 Case No. 91-76456 (Bankr. N.D. Ga. 1991).[4]

In this case, Debtor initially certified under penalty of perjury that she did not own any assets with equity sufficient to satisfy any portion of her creditors' claims.  These schedules were filed at a time when, contrary to her schedules, Debtor in fact:  owned the Morehall property; was in line to receive $111,000.00 in life insurance proceeds and two vehicles; had additional undisclosed bank accounts; and had positive monthly net income of $525.00, rather than the negative $159.00 she initially disclosed.  <u>See</u> Dckt. Nos. 1, 19 and 32, Schs. A/B, I and J.  When it became apparent the Trustee was aware of Debtor's ownership of the Morehall property and had continued the §341 meeting to obtain additional information, she converted her case to a chapter 13, disclosing additional assets and proclaiming good faith.  Debtor's proposal now to pay all her creditors in full over the life of a chapter 13 plan does not excuse or cure her initial failure to disclose.

The integrity of the bankruptcy system is based upon the "honest but unfortunate" debtor being forthright, candid, and truthful in their disclosures. <u>See</u> <u>Marrama</u>, 549 U.S. at 367 ("The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'"); <u>In re Campbell</u>, 634 B.R. 647, 653 (Bankr. D.D.C. 2021)("Inherent in the concept of the 'honest debtor' are the attributes of '[g]ood faith and candor,' which 'are necessary prerequisites' to any bankruptcy filing." (quoting <u>In re Zick</u>, 931 F.2d 1124, 1129-30 (6th Cir. 1991))); <u>In re Blige</u>,

---

[4] The Court may take judicial notice of facts not subject to reasonable dispute such as the disposition of Debtor's prior bankruptcies.  <u>See</u> Fed. R. Evid. 201.

2019 WL 3959982, at *3 (Bankr. S.D. Ga. Aug. 21, 2019)("Notwithstanding the number and variety of possibly relevant factors, the easiest way to fail the good faith test is for a debtor to misrepresent, lie or otherwise mislead the court.")(internal citations, punctuation and quotations omitted); Meredith v. Roberts (In re Roberts), No. 11-60690, 2013 WL 441378, at *3 (Bankr. S.D. Ga. Jan. 24, 2013)("Failure to make accurate disclosure in bankruptcy documents, making fraudulent representations to the court, or an unfair manipulation of the Bankruptcy Code is sufficient cause for dismissal [or conversion under §1307(c)].").

Accurate self-disclosure of one's financial situation is a primary duty of all debtors seeking relief under the Bankruptcy Code. See 11 U.S.C. §521(a); Marrama, 549 U.S. at 369-70 ("[T]here is no 'Oops' defense to the concealment of assets…." (citing with approval the bankruptcy judge's findings)); Kitchens, 702 F.2d at 889 (A factor to consider in the good faith analysis is the accuracy of the schedules "and whether any inaccuracies are an attempt to mislead the court."); Boroff v. Tully (In re Tully), 818 F.2d 106, 111 (1st Cir. 1987)("A petitioner cannot omit items from [her] schedules, force the trustee and the creditors, at their peril, to guess that [she] has done so—and hold them to a mythical requirement that they search through a paperwork jungle in the hope of finding an overlooked needle in a documentary haystack."); In re Davis, Nos. 13-40938-JJR, 13-42039-JJR, 2014 WL 3497587, at *11 (Bankr. N.D. Ala. July 11, 2014)("Ours is a system built upon the principle of full and candid disclosure." (quoting In re Lewis, 309 B.R. 597, 602 (Bankr. N.D. Okla. 2004))); Hembree v. Sutton (In re Sutton), Adv. No. 11-70007, 2013 WL 1933015, at *12 (Bankr. N.D. Ala. May 9, 2013)("The effectiveness of the bankruptcy system depends on the Debtor's complete candor, and it is not the job of the trustee or creditor to search for information about the Debtor that should be readily disclosed in [her] bankruptcy [s]chedules and [s]tatements.")(internal

citations and references omitted); <u>In re Rosser</u>, 2022 WL 4389323, at *2 (Bankr. N.D. Ga. Sept. 22, 2022)("The same conduct [considered in a §727 action] can support an assertion by a party opposing a motion to convert that the debtor's request to convert was made in bad faith and such conversion would constitute an abuse of the bankruptcy process." (citing <u>Marrama</u>, 549 U.S. at 365-68)).

**Property Ownership and Will.**

Debtor argues she disclosed her interest in her father's estate and the Morehall property, but merely placed it in the wrong location on the petition. Debtor's initial disclosure was: "My father [] just passed (2/21/2023), testate, heirs: me and my 3 brothers (decedent's real estate subject to [an $80K mortgage])". Dckt. No. 1, Sch. A/B at ¶32 and Sch. C at ¶2. Even if the Court accepts Debtor's argument, this disclosure implies she is entitled to a one-fourth interest in the property when in fact, she already owned the property outright, subject to the mortgage. Further, under the terms of her father's will it is clear Debtor was entitled to all of her father's assets outright, not merely a pro rata portion as she claimed in her schedules. June 8, 2023 Hr'g Tr. Ex. 6, Third and Fifth Paras. (bequeathing all assets to the Debtor). Debtor had the will before she filed her bankruptcy but claims she thought the disposition of this property would be covered in the probate process. This is unconvincing. The probate process is not relevant when she owned the Morehall property prior to filing her bankruptcy petition. Furthermore, the probate process does not change the fact that Debtor was entitled to all her father's assets, not a pro-rata percentage.

**Life Insurance.**

Debtor also contends she was unaware of the $100,000.00 life insurance policy, of which she was the sole beneficiary, until the six-day window between the initial §341 meeting and when she filed her Motion to Convert. She says she discovered the policy only when she reviewed her

father's checking account records.  After considering the testimony and totality of the circumstances, the Court does not find this testimony credible.  Debtor was the joint owner of this account.  She was under an obligation to review and disclose this account at the time she filed her petition, and she failed to do so.  In addition, her brother testified her father managed his finances until he became ill, and that Debtor was basically the sole caregiver of their father.   Furthermore, Debtor acknowledged her father told her the smaller $5,000.00 insurance policy was to cover his funeral expenses.  The Court acknowledges and is sympathetic to the stress Debtor was under caring for her father, but given the totality of the circumstances, does not find it credible that her father would disclose this small insurance policy while neglecting to discuss the $100,000.00 policy that was still appearing in the joint checking account.

**Bank Accounts.**

Debtor disclosed in her initial schedules four bank accounts with a collective balance of $7,800.00.  See Dckt. No. 1, Sch. A/B at ¶17.  After the initial §341 meeting and contemporaneously with the filing of her Motion to Convert, she amended this collective balance to $11,537.00.  Dckt. No. 19, Sch. A/B at ¶17.   Then, after the conversion and a few days before the hearing on the Trustee's Motion to Set Aside Conversion, she amended her schedules again to disclose four additional bank accounts.  Dckt. No. 32, Sch. A/B at ¶17.  The only two relevant newly disclosed accounts are another savings account with a balance of more than $2,000.00, and the account she owned jointly with her father with a balance of $7,377.00.  Id.  The disclosed cash balances on her accounts rose from $7,800.00 to $11,537.00 to close to $21,000.00.  Dckt. Nos. 1, 19, and 32, Sch. A/B at ¶17.

The Court understands the actual ownership of the joint account with her father may have been confusing at the time Debtor's father passed away.  However, this does not excuse Debtor's failure to disclose the other savings account.  Dckt. No. 32, Sch. A/B at ¶17.

**Timing and Other Matters.**

Frequently, chapter 7 bankruptcies, like Debtor initially filed, are no-asset cases that are concluded in a matter of months with debtors discharging all of their unsecured debts without any payment to creditors.   For example, Debtor's previous chapter 7 case was commenced and completed in approximately six months with Debtor receiving a discharge of all her unsecured debts.[5]   Comparatively, chapter 13 cases generally last between three to five years with debtors devoting their monthly disposable income to fund their chapter 13 plans, paying creditors over time. For example, in this case, Debtor's proposed chapter 13 plan would take more than 40 months to pay her initially scheduled debts, without factoring in the additional time it would take if the statutorily allowed fees were included in the calculation.  Had the Trustee not been diligent and had the house transfer not been a matter of public record, Debtor's chapter 7 case most likely would have proceeded to discharge without creditors receiving anything.  Debtor's chapter 7 bankruptcy filing appears to be timed to extinguish Debtor's unsecured debts without disclosing the assets her father gave her.  It is disingenuous for Debtor to proclaim good faith and convert her case to a long term repayment plan once the Trustee became aware of assets.  In re White, 542 B.R. 762, 769 (Bankr. E.D. Va. 2015)("It is disingenuous for the Debtor[] to argue that [she] began to proceed

---

[5]  See fn. 4, supra.

properly and in good faith after [her] first attempted 'low ball' bid proved unsuccessful because it was challenged by the []Trustee.").

At the hearing, Debtor initially said the bankruptcy filing was precipitated by collection lawsuits by two creditors (LVNV Funding and Velocity) holding collective claims according to her schedules of less than $9,300.00. Dckt. No. 1, Sch. E/F, ¶¶4.10-4.14 and ¶4.18. According to her amended schedules, as of the petition date, she could have paid these debts in full from her funds on hand even without even considering the joint account she owned with her father. Dckt. No. 32, Sch. A/B at ¶17. When pressed, Debtor testified she filed in anticipation of other creditors seeking collection. However, her entire debt disclosed in her initial schedules totals less than $26,000.00, when she was gainfully employed and had more than $20,000.00 of cash in deposits, was the beneficiary of $111,000.00 in insurance policy proceeds, and owned the Morehall property along with two vehicles. Dckt. Nos. 1, 19 and 32, Schs. A/B and E/F.[6] Ordinarily, this debt/asset ratio would not result in denial of a debtor's motion to convert; however, the Court finds it relevant given the particular facts and circumstances of this case where Debtor's initial chapter 7 petition showed no assets available to pay her creditors anything notwithstanding her true financial situation.

Debtor also certified in her initial chapter 7 petition that her expenses exceeded her income by $159.00 each month. Dckt. No. 1, Schs. I and J. This negative monthly income further supported Debtor's initial contention that there would be no assets available to pay her creditors in her chapter 7. However, two months later, without a change in wages and once it became apparent the Trustee was aware Debtor actually owned the Morehall property and was seeking additional information,

---

[6] The Court notes after the hearing, Debtor has amended her schedules yet again disclosing $36,952.00 of debt. Dckt. No. 38, Sch. E/F.

Debtor filed her Motion to Convert and amended her schedules contemporaneously to disclose a positive net monthly income of $525.00 available to fund her chapter 13 plan. Dckt. No. 18 and Dckt. No. 19, Schs. I and J. At the hearing, Debtor was unable to give any explanation for this change in her available household net income. Debtors certainly may, and often do, tighten their budgets to fund chapter 13 plans; however, given the facts of this case, this change is relevant in the good faith analysis.

Again, the Court is sympathetic with the stress Debtor was under caring for her father and with his passing. Debtor testified she had been working with bankruptcy counsel for months before the petition was filed. She says this explains why some of the assets such as her ownership of the Morehall property were not disclosed in her initial petition. However, this is not credible given the fact that her initial petition actually reflects her father passed away February 21, 2023. This initial petition then inaccurately claims Debtor is only a pro rata beneficiary of her father's estate. This shows Debtor actually revised her petition shortly before filing her bankruptcy but failed to accurately disclose her financial situation. Also, her §341 meeting was continued numerous times to accommodate Debtor's work schedule, and Debtor never amended her schedules until it became apparent that the Trustee was aware of undisclosed assets and was seeking more information. Finally, it is no defense to claim this information was provided to her counsel especially when the inaccuracies were apparent on the face of the documents submitted under penalty of perjury. Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 397 (1993)(clients are bound by the actions of their counsel, an agent, and must "be held accountable for the acts and omissions of their chosen counsel"); Boroff v. Tully (In re Tully), 818 F.2d 106, 111 (1st Cir. 1987)("Nor can an attorney's willingness to bear the burden of reproach provide blanket immunity

to a debtor; it is well settled that reliance upon advice of counsel is, in this context, no defense where it should have been evident to the debtor that the assets ought to be listed in the schedules.").

At worst, Debtor initially attempted to obtain her bankruptcy discharge without accurately disclosing significant assets.  At best, Debtor has failed to fulfill her duty of candor and diligence with completing her schedules under penalty of perjury.  While any one of the inaccuracies alone may not have been sufficient to deny her conversion, given the totality of the circumstances of this case, the Court finds Debtor's conduct to be egregious and atypical of the honest but unfortunate debtor and finds that the Trustee has carried his burden of proof showing the Debtor has acted in bad faith in connection with her chapter 7 and is not entitled to convert this case to a chapter 13. Marrama, 549 U.S. at 367 ("[A] debtor who acts in bad faith prior to, or in the course of, filing a Chapter 13 petition by, for example, fraudulently concealing significant assets, thereby forfeits [her] right to obtain Chapter 13 relief.").

For these reasons, the Trustee's Motion to Set Aside Order of Conversion and Objection to Conversion of Chapter 13 is ORDERED GRANTED and the case is ORDERED reconverted to chapter 7.

15